v. Sorensen, Case No. 25-241. Thank you, Your Honor. Good morning, Mr. Sussman. May it please the Court. Changing the pace a bit. The district court found that the appellant had made out a prima facie case. The defendant articulated nondiscriminatory reasons to terminate. Appellant contested each reason, showed that she had no prior notice of any of the alleged reasons, that none was actually factual, and submitted a reasonable jury, could, as per Reeves at 150-151, reject defendant's articulation and conclude there are pretexts for gender bias. Appellant needs to establish. Can you just identify for me what the evidence is in the record that gender was a but-for cause of her termination? So the way we understand the evidence, Your Honor, is that she was replaced by a male who was paid $20,000 more than she was for performing some of her duties, not all of her duties. With regard to the actual reasons given, which, again, is an inferential aspect to this, of course, the reasons were not only pretextual, but we feel highly pretextual in this case, in that my client had been the deputy for a year and a half. There had been no substantive ---- What you just said, we feel they were pretextual. What evidence is there in the record that the stated reasons were pretextual? Well, there are three reasons. One related to West Central and an alleged redundancy of service. With regard to that, my client was never advised of any issue with respect to it. There was continual consultation between her and the Commissioner. With regard to it, the record most favorable to her is there was no issue. With regard to moves, there was an emergency she was dealing with, with respect to the law department. The law department had been late and dilatory in getting back to her. She was trying to make arrangements. And, again, there's no evidence Mr. Sorensen ever engaged her in any way with regard to the matter in a critical way or otherwise. With regard to the third issue, which is his desire to have his name on a directorship with the Orange County Transportation Council, she sent him a draft document which, in fact, indicated that his name would be there. There was no final submission to the State without him. And it seems like an entire fabrication. So he had a meeting with Mr. Gross, and he indicated in the meeting with Mr. Gross, who was the HR Commissioner, he wanted to terminate. Mr. Gross ---- At her deposition, she testified that her time with Mr. Sorensen throughout was pleasant. She said there was no specific incident that she was aware of where he acted based on gender other than the termination. She said that he never made any derogatory remarks about her based on gender. So I'm not sure where what there is other than the absence of things. This is the problem. The problem that we're having, I think, in this conversation is what is pretext and its significance in these cases? I understand the law from Reeves on, and Reeves was decided 25 years ago by a unanimous Supreme Court. The law seems to ---- The law says it's not enough just to show pretext. You have to show that it's a pretext to cover up discrimination. Do you disagree with that? Yes. The law says you can infer from falsehood and the prima facie case and the evidence in support of it, you can infer ---- a reasonable jury can infer from that. Moreover, most significantly ---- Right. Could I just finish this point? Most significantly, Reeves makes absolutely clear that a reasonably charged jury can categorically reject claims made by a defendant when those claims are, in fact, arguably false and can draw an inference from that that they are shielding discrimination. That's what the law has been. So your view of it is the way the three steps work is that you do a prima facie case that creates an inference of discrimination. That inference just is there. The employer has to show a legitimate business reason to counteract the inference. And if you can show that that legitimate reason is pretextual, meaning like it's just not the genuine reason, then your initial inference from step one survives. So you don't need to separately show that it's a pretext for discrimination. Right? That's your ---- Respectfully. I don't think that's Michael Sussman's formulation. I think that's the formulation in Reeves and it's the formulation in the Supreme  I mean, I'm not ---- I'm not trying to take credit for this. I know me. So I understand that. But so, you know, Judge Shin is saying, but at step three, it should be a pretext for discrimination as opposed to merely a pretext. And, you know, but from your perspective, that's confusing step one and three. But regardless, overall, we have to determine whether the record allows the inference that there was discrimination on the basis of sex. So whether it occurs at step three or at step one, I guess, you still ---- there still is a burden to show that there is ---- Look, I honestly think there's so much intellectual confusion about this, it's honestly ---- we've reached the point of, and I've been doing these cases for 40 years, of absurdity. I think the law, honestly, is fairly clear, and I think that district courts repeatedly are not following the law in not only this circuit, but around the country. Reeves makes very clear, I don't know how it could have been clearer, the Supreme Court said specifically, comparing it to a Rule 50 motion, that the assertions made by defendants are not to be believed unless they have to be believed. That's what the Court says on 150.151 in Reeves. And what that means in this context, and why it's so important here to establish this more clearly in our law, just as this Court did in the Bard case, where Judge Nardini went back to some other issues and explained those in a very clear way. What we have here is a situation where a defendant makes a decision that's challenged. There's no question he replaces my client with a male. He then later, after the lawsuit's filed, puts in a female. So actually, so I do ---- so whether it's at step three or step one, I do want to talk about the inference of discrimination. So why is there a prima facie case in the first place? We've said sometimes that just replacing somebody with an employee of the other outside the predicted class is enough to raise an inference. But in this case, it's true that there was this immediate successor who was male, but the person who occupies the job now, hired by the same supervisor, is female. After the lawsuit was filed, and the case law says that's to be discounted because it's an after-the-lawsuit's-filed type action. And then there's evidence that he, you know, promoted eight other women and so on. So you're saying the reason that there's the prima facie case is just the replacement by the initial successor. Is that right? The fact that the salary was $20,000 higher, the fact that in fact, he claims dissatisfaction with my client. He claims dissatisfaction with my client. He also unrefutedly in the record, supposedly four months earlier, had talked with her about giving her a raise because of how well she was doing her job. So it's unclear how any reasonable jury, if this case were before a jury, would believe anything he has to say. How does that show sex discrimination? It shows that he was a woman, right? So if in fact he was really happy with her performance and only later decided to terminate her, doesn't that suggest that it's based on something that happened during the job as opposed to her status? Here's the problem, Your Honor, respectfully. What you're doing, and I frankly think what Judge Creschetti did here, was get in the weeds and take over a jury function. A jury function is to determine whether there was intentional discrimination. Assuming, assuming that we can demonstrate, as I think we clearly did at the summary judgment stage, significant evidence of pretext. And so pretext means that someone comes in with reasons, and there are many forms of this. One is they've never discussed the reasons before, even though you'd expect they would, because of the significance of the reasons and the significance of the position of the other person. You're running the company. I'm sorry. You're saying, you're saying that pretext by itself gets the case to the jury? Once a prima facie. Yes. Well, first of all, the court didn't find a prima facie case here. The court assumed one, which is, well, there's a difference. But the case law is clear, I think, that it has to be pretext to cover up discrimination. That's an inference the jury can draw from strong evidence of pretext. That's what the case has continued to say. No, no, no, no, no, I don't, the jury still has to draw the inference. I agree. That the pretext is to cover up discrimination. I'm not arguing that. What is the evidence here from which the jury can say, even assuming we find pretext, the pretext was to cover discrimination? Because the gentleman who replaced her was paid much more than she was. The reasons, the reasons that were given for her termination do not predicate, it doesn't make any sense. A jury could say, a jury could say. You have, she was replaced by a man who was paid more, anything else? There's a whole history that's displayed in the record, which she explained in her deposition extensively. There were two men out of a 22-person department. She explained this. Males engaged in the same behavior as females. They were not counseled to give any write-ups. Females were. Wasn't she a part of some of that counseling of women? She recommended counseling to both. Counseling was given only to the women. Yes, she was part of it. She was deputy director. But he did not counsel the men, despite her guidance, that they were in the same position as the women. So then you're correct. The male was promoted. She indicated there were several more qualified, longer-term females who were there. All of that's there, but I think, frankly, it's ancillary and it's there, but I don't think that's what we're primarily relying on. We're primarily relying on the fact that there are jury questions that have to be resolved as to his motivation. That's what Gallo says. You can't make a determination at this point on the circuit court or the district court as to his motivation. Sorry. Regardless of the step at which it comes in, there has to be enough for a jury to determine that the motivation was sex discrimination. If we thought that if the record was smoking gun evidence and nobody could possibly reach a different conclusion that, yeah, the reasons he gave were pretextual, but why they were pretextual is because he was covering up, like, a personality conflict with her or something, you know, unrelated to sex that he didn't want to admit to, that would not be enough to state a claim for sex discrimination. And your cases do say that. Your cases do say that. There are situations where someone induces a reason, which is not a gender-based reason, but a reason of the sort the Court just mentioned. And that reason seems indisputable in the record. Look, there are three kinds of reasons. Regardless of the step at which it comes in, both of these things need to be established, that the reasons were pretextual and that what the pretext covered up was sex discrimination. No. The second is inferential. That's the whole point. When you say the reason has to be, that's the same as demanding direct evidence, and direct evidence is abjured. There is no requirement for direct evidence. Justice Shin starts by asking me questions about direct evidence, and I acknowledge there is no direct evidence. That's not evidence. Not necessarily direct evidence. When you say, did you make comments of a gender nature, did you make comments? I'm asking you to tell me, I asked you to tell me what evidence there is in the record of that gender was a but-for cause. Let me take just one last swath of this. Just, I think there's a way to understand your case law that does make sense. No, no, no, no, no, no, no. Okay. I'll save it for rebuttal. No, no, no, no, no. Sorry. No, I want to give you an opportunity to answer the question that was just posed by Justice Shin, which is, point to somewhere in the record where there was evidence that the pretext was pretext for sex discrimination. The fact, that's based on my sex, and their explanation is pretextual. Respectfully, respectfully, Judge, that is not the law. The law is not that the pretext, the law is not that the pretext showing has to be, has to be about gender. Assume that I disagree with you. Okay. Just assume. And you might be right, you might be wrong. Assume. Show me the evidence. There's no evidence that the pretext, the pretext, that is the falsity of the reasons adduced. There are three reasons. There's no basis to say that the reasons, the underlying reason is because of gender. In other words, did he, did he say that that's not the law, though? Then answer the question. That's fine. I just want to. You have time for rebuttal. All right. Thank you. And we'll hear from counsel for Swanson. Good morning, Your Honors. May it please the Court, Kelly Logich for Dependent Appellee Alan Sorensen. The Court, Your Honors, correctly noted, this is a very high burden. This is a 1983 equal protection claim. This is not a discrimination claim brought under Title VII. It's a completely different standard you have to establish but for causation. Your Court, this Court enunciated those principles in Namofsky and recently confirmed those principles in the Court's summary order, Allen v. Padilla, which was decided. Okay, but in this context, we do use the three-step framework, right? So, doesn't Mr. Sussman have a point that the way this normally works is there's a primatization case, meaning that there's an initial, there's enough evidence that leads to an inference of sex discrimination. Then the employer, or in the 1983 context, the supervisor, or whatever, gives legitimate reasons for the adverse employment action. And then the employee, or the plaintiff, can rebut those by showing that that was pretextual, it wasn't the real reason. And so, if she contests the reasons by saying, this memo about his reasons was fabricated, there never was a meeting with me about these concerns, so that was not the real reason for the action he took. Shouldn't the effect of that be to restore the initial inference of discrimination that was established at step one? And so, isn't your claim really there shouldn't have been a primatization case at step one? It's not that she hasn't raised a question of fact about pretext. Returning, Your Honor, and I think this, the very same argument that's being made here today was raised recently before this Court in the Allen v. Padilla case. And basically, the plaintiff there was doing the same thing, asking this Court to infer pretext because, or infer discrimination, rather, because there were factual issues as to pretext. And this Court concluded, even if there were a factual dispute as to pretext, defendant would still be entitled to summary judgment because plaintiff presented no evidence outside of her prima facie case that, in this instance, race was a but-for cause of the decision not to hire her. In short, there is insufficient evidence for a reasonable jury to find that Allen was subjected to race discrimination, much less that race was a but-for cause of Padilla's decision, even if the jury disbelieved Padilla's stated reasons for not hiring her. Even though, you know, the way to view the three-step process that I just articulated is logical, you're saying that our case law has made it so easy to establish a prima facie case that we've started requiring at step three additional evidence of a discriminatory motivation. Particularly in the context of an equal protection claim under Section 1983. Under Title VII, it is a less than standard of causation. Okay, but whether we think about it at step three or step one, I mean, do you think that there just isn't any evidence that would give rise to an inference of sex discrimination? I think here there is absolutely no evidence that would give... What about the replacement by a man at $20,000 more a year? So, Mr. Zemanski was the former Deputy Commissioner of the Planning Department. Initially, Mr. Sorenson asked a female in the department who was leaving, Ms. Long, to come back to train Ms. Bennett, to perform these certain functions that Ms. Long had been performing. Ms. Long declined that offer. She was not interested. She suggested he contact Mr. Zemanski, who was the individual in the department that had performed those tasks before he retired. Mr. Sorenson did so. There was a quick turnaround time. There was a March 1 deadline. They needed to submit, I believe it's a UPWP plan. And so, Mr. Zemanski was brought on. Mr. Zemanski's salary was in the salary range that was advertised for that position. And that position continued to be advertised while Mr. Zemanski was filling that temporary role in the department. I believe the upper range of that salary was $109,000. Mr. Sorenson testified that Mr. Zemanski asked to come in toward the upper range. He elected to do that. Also, Mr. Zemanski... How long was he back for? He was back for less than 90 days. I believe it was 84 days. Once that submission was made on March 1, he was done on March 2. And Mr. Sorenson continued to look for a replacement deputy commissioner, which, as your honors have pointed out, ultimately he did replace with a female, Ms. Butler, in May of 2023. Ms. Butler still holds that position. If Zemanski had this very sort of limited temporary role, why did they make him the deputy commissioner? Because there was a time constraint involved. There was an issue with trying to enter into a contractual consulting arrangement. There was a quick deadline. Ms. Richmond was let go in early December, and decisions had to be made quickly to bring somebody in that knew how to perform these tasks, that could teach Ms. Bennett how to perform these tasks in the short term. So, do you agree that that evidence about the replacement by Zemanski is enough to establish a prima facie case at step one, but isn't enough to establish a discriminatory motivation at step three? Or, you know, are we not really thinking about it in terms of the steps? I think that on the motion to dismiss, the court concluded that it was enough at that stage, pre-discovery, to say she was temporarily replaced by a male. And that got, the motion to dismiss was denied and the case went forward. But through the course of discovery, as your honors have pointed out, there is, Mr. Sussman says there's strong evidence of pretext here. There is no evidence of pretext here, whatsoever. Well, there's a question of fact about pretext, right? So, if he says he wrote this memo to file, and I had a meeting with her about my concerns about her performance, and she says that is a fabricated memo, and we never had that meeting, that is some evidence that these are not the real reasons for the firing, right? And yet, she acknowledges, even if she denies that there was a single meeting with respect to those performance-related issue, she acknowledges that those issues were discussed on different occurrences and in miscellaneous conversations. Her argument is that, well, he didn't specifically say to me, oh, you know, you could be fired for this, you could be... If she could establish that he fabricated a memo and made up a meeting, it does seem like there is a pretext going on, right? So, your point is not that there isn't evidence of pretext, it's that it doesn't show that it's covering up sex discrimination. Exactly, your honor. There is no evidence that the reasons provided by Mr. Sorensen are an attempt to cover up sex discrimination in this case. The record is clear... But at this stage, you know, we do think that there's some evidence that the memo was fabricated or that the meeting didn't happen, right? Because, like, he claims it did and she claims it didn't. It's not obvious that you can resolve that factual question at this stage. But what I submit is that that's not enough of a factual question to get to a jury. It's not simply that it has to be pretextual and that it wasn't the genuine reason. It has to be that what it's covering up is sex discrimination. Correct, your honor, and there is absolutely no evidence of that. As was pointed out, Ms. Richman indicated that her relationship with Mr. Sorensen throughout her tenure as deputy commissioner was pleasant. She worked for him for nearly two years before he made the decision to let her go. The issues with discipline, in my opinion, are red herrings, males versus females. You know, she tries to discount the fact that she was... Why are they red herrings? Because she was fully on board when questioned at deposition about any evidence that she could come up with with discrimination. The only thing she came up with respect to her own personal self was that she had been terminated. There was no other evidence. She never filed a complaint about discrimination. She never told anyone that she thought that Mr. Sorensen discriminated against women. There were no derogatory comments. There was nothing negative about their relationship throughout. So when pressed at deposition, oh, well, females and males were treated differently in terms of discipline. First of all, it wasn't discipline. They were counseling memos. Second of all, she was in full agreement that these two individual females, there were performance-related issues there. They were not timely completing their assignments. In fact, there's an email where she says, this is excellent, meeting Mr. Sorensen's memo. So to, after the fact, turn around and say, oh, well, he treated males and females differently. And as the court noted below, she never established that the one male she was speaking of was similarly situated to Ms. Richman or to those other females in any way. Well, sounds like Mr. Sussman, in one respect, agrees with you that there's no evidence that it was pretext for sex discrimination. But what he says is that all you need to show is pretext. That is, inconsistencies, some dispute as to what occurred and what the explanation, in fact, was. Well, two things there. I don't think that there is evidence of pretext, number one. There's heavy reliance... Pretext for discrimination. Correct. And the reliance on the Reeves case, in my opinion, is misplaced. Because, number one, Reeves was not an equal protection claim under Section 1983. And also, there was other evidence of discrimination in the Reeves case. There were age-related comments that were made to Mr. Reeves. There was a co-worker that indicated that Mr. Reeves was treated differently. There was evidence that... If the question of pretext were just about establishing that the reasons given were not the real reasons, you would agree that she raised a question of fact about that. The important thing is whether there's evidence that what it's covering up is sex discrimination. I don't really think that she has raised a question of fact about that. He claims that he wrote this memo and there was a meeting. She claims he didn't write the memo contemporaneously and there wasn't a meeting. Why is it that no jury could agree with her? I don't think that's enough to get her to a jury, Your Honor. I think that her own perceptions and feelings about her performance and whether or not she was discriminated against are not enough. Right. So you're still going to the question about whether it was discrimination, not whether the meeting happened, or those were the genuine reasons for the termination? There's no evidence that they were not the genuine reasons for termination. But there is some evidence because she says, the memo's fabricated, there was no meeting, he never talked about these issues with me at the time. You're saying there's no evidence other than her conclusory assertion? Absolutely, Your Honor. There's no evidence other than her own self-serving conclusory assertion. But aren't you saying the evidence at the meeting happened his conclusory self-serving assertions? Mr. Sorensen's affidavit goes into great detail about the issues that he was having with respect to Ms. Richmond's performance in the department. So you're saying that his document is corroborated by events that actually happened in the world? That's your claim? Yes. And in fact, when you look at some of those reasons, while she denies that those were good reasons or that she agrees with those reasons, for example, if you take the West Central study, there's an issue that there was a redundancy in the work being done. So there was a contractor with the county that was performing work that was already being performed by the city of Middletown to the tune of a $30 million grant from the Orange County Transportation Council. When Ms. Richmond testified at deposition, she said they didn't speak about a redundancy. But what she said was that there was going to be a meeting to discuss with the city of Middletown the integration of that into what... You're saying that she acknowledges that there were these issues. A hundred percent. That might have justified a firing. But of course, let's say there was smoking gun evidence in the record where the supervisor said at the time, I don't care about that, that's fine, don't worry about it. And then later claimed that he fired her for that reason. We would say that that's not plausible that that was the reason because you contemporaneously said that that's not a problem, right? Right. So it can be pretextual even if it happened. But there is no smoking gun evidence in this record to suggest... That's your point. All right. Thank you very much. Thank you, Your Honors. Mr. Sorensen had possession of every file relating to the three matters. If you look through the summary judgment record, you will see absolutely not one document created with regard to any of the three projects which corroborate one thing he said. Nothing. This is about as clear a pretext case as you could have because he had every opportunity to speak with my client, say to my client, do this, do that, do the next thing. There's absolutely no evidence with regard to any of these that that ever happened. The November memo is not only a fabrication because there was no such meeting. Counsel's response is, but she acknowledged he spoke with her about these projects. Of course they spoke about the projects. The question isn't whether they spoke about the projects. The question is whether he was in any way ever critical of anything she was doing with regard to the project. And the answer is no. He does say that he raised some of the concerns at different meetings, no? He never indicated in any way, shape, or form, according to her testimony, if there was anything she was doing wrong, omitting, or anything else. There were issues, of course, there were always issues of projects. That's not the same as saying you did something or you should do something. There's no evidence of it. And it's critical to acknowledge that had there been such an issue, it would be expected that someone of her position as deputy commissioner would have had those conversations. There's a plain dispute here as to whether there was ever any performance-related issue, period. The November memo was created after Gross, the personnel commissioner, said, you can't fire somebody because you have no documentation. Look at his deposition. That's what was stated. And then he creates this false memorandum. That's plain pretext. But an employee can be fired for any reason as long as it's not a prohibited reason, so it has to be not so. I understand that there's this question about at what step it comes in and whatever But it's true that a jury has to conclude not only that these were the wrong reasons, but also that the real reason was sexist. I'm not arguing that, but I am arguing that a jury could conclude that on this record because of the nature of the pretext. Contrary to what my sister at the bar says, there is very strong pretext evidence here, and it's evidence that nothing was ever raised, documented, and the claims he made. Thank you very much. The claims he made have no corroboration. Thank you very much. We've got the arguments well in line. We'll preserve the decision in that matter.